Good morning, Your Honors. May it please the Court, my name is Howard Davis, and I represent the petitioner Daniel Bautista-Lopez. And I'd like to reserve about two minutes for rebuttal. Mr. Bautista is a native and citizen of Mexico. He was placed in withholding only hearings before the immigration judge, and who denied the withholding in CAT on adverse, primarily on adverse credibility grounds, and for those reasons denied the CAT. The board agreed with the judge and found no legal or clear factual error in the IJ's decisions relating to CAT. The main reasons for the adverse credibility findings were alleged inconsistencies between the I-589 written application and the testimony. And the main inconsistencies focused on the issue of what happened to the petitioner's toes while he was in captivity, the issue of the crippled man, and the ransom. And the judge and the board did not accept the reasons given for the lack of detail in the I-589. The board refers to these problems as inconsistencies, and the respondent to these as omissions. But I think a more nuanced way would be looking at this not so much as one of inconsistency and omissions, but rather that during the testimony that there was a fleshing out in specific details of what had been referred to in general in the I-589. And so in that sense, I think that a case discussed by the respondent, Zaminoff, as well as another case which is cited by Zaminoff, Smoliakov are actually of help here. Before you get to those cases, it's my understanding you're arguing that the IJ made an error with his adverse credibility findings. Is that correct? Yes. And you argue that memory loss or suppression is a reaction to trauma, and that explains perhaps the inconsistencies or the omissions. Am I correct there? Yes. Did you raise that argument before the board, the trauma-induced memory loss argument? No, that was not. Have you waived it?  And this gets to the issue of ‑‑ And your support for that would be? Well, basically what we discussed in the reply, Kwong v. Holder, and in ‑‑ And how does that help you? Okay. It helps, first of all, that if basically if the board, even though it was not specifically raised in the brief, in the appellate brief, and it was not. I mean, that's clear. If the board discusses the issues of the credibility, then the board has addressed, and therefore the whole concerns behind the exhaustion of administrative remedies have been resolved. So the board didn't have a chance to address the memory loss argument? Yeah. Well, not specifically that, but it did talk about in general that it was not accepting the reasons given by the petitioner. So I think that generally that would be, you know, included. I mean, he was. It's a generous umbrella. Well, yeah, it is. But I think that the language allows for it. So getting back to the discrepancies, I guess I'll call them for now. Right. Weren't they material, or why weren't they material? So, Your Honor, I think that, and I do want to answer your question, but I think that I'm not, my argument is that they're not discrepancies, and that. Well, these additions or whatever. Well, not even additions, and I'm putting this in the, really in the framework of. That's fair, if you don't want to call them. These further descriptions, are they not significant, and are they not significant enough to support the determination of the IJ? If one is taking a look from the point of view of an inconsistency, if, and defined as contradiction. However you want to call it. Yeah, however I want to define it. Yes. Just answer the question. I would have to say yes. Okay, just answer the question. Those are, yes. In that sense, they're significant. But what I'm saying is, is that, that what we have here is a fleshing out of something that was referred to in general, and this is where I think Smolniakova is of help here. And so in Smolniakova, the I-589 in Smolniakova just said, the applicant said that she had been mistreated and threatened several times, and that was it. And then gave specific examples of that mistreatment and threats during her testimony. Whereas in Zamenhof, on the other hand, and Huisev, another case cited by the respondent, in Zamenhof, the initial declaration discusses in very great detail the universe of the, of what had happened to the, what had been perpetrated against the petitioner. And then, in great specificity, and then in the second declaration or in testimony, he adds all these other things. So that's really quite different here, and he was referring to things, he was talking about things that had not been referred to in the I-589. And so our case really fits more within Smolniakova rather than Zamenhof and Huisev. Because in Smolniakova, what was the difference or what was the additional elaboration or however you want to call it? The beatings, the threats, I mean, just very, it really went into great details. Greater details than, you know, than just, you know, from the general statement of mistreatment and threat that she had been. So his failure to mention in his application that one of his toes was severed by bolt cutters when he was in custody and describing what happened to him as being beaten severely for approximately three weeks, your position is that that's just additional detail, but not significant enough or inconsistent? It's not inconsistent, and it is the fleshing out, yes, it is the fleshing out of something that was generally referred to. Counsel, Judge Gould, if I can interject, just, and I should know this, but could you help me out by telling me whether this case, the timing of it, puts it under the Real ID Act or not? It is, it's post Real ID. Real ID is from 2005. In this case, he was put into proceedings, I think, in 2014, around that time, if I remember correctly. So you're, on the, putting aside the cat claim, on withholding, you're under the Real ID Act, which doesn't require any inconsistencies to go to the heart of the matter, right? Correct. And the, under the Shrestha opinion that I recall, having something to do with years ago, we said you have to look at the total circumstance. Correct, yes, Shrestha, yes. And so I guess my question is, wouldn't, like, the guy not saying his toe had been cut off, initially be part of the total circumstance? Yes, but what I'm, again, this, I think this is the, my main theme here is, is that this, again, this is not an inconsistency. It falls within Smolniakova in that this is the fleshing out in specifics during testimony of what had been generally referred to in the written statement in the I-589. So, I mean, that, I mean, it's really, it's taking a look. Our case law also says, I mean, one way to kind of look at this is whether the, this additional detail or inconsistency, I don't want to excite you by saying inconsistency, but is trivial or whether it's trivial. That's one of the words that's been used. And so would you say this was trivial, I mean, revealing that? No, these were not trivial, but when I'm, again, I'm going to, I know I'm sounding like a broken record here, but I'm just saying it depends on the glasses and the spectacles that you're looking at this through. And so anyway, I see I'm way beyond whatever I reserved for. Thank you. So, thank you. May it please the Court. My name is Craig Newell, and I'm here on behalf of the Attorney General. The Court should deny this petition for review because substantial evidence supports the agency's finding that Mr. Bautista was not a credible witness, and he has not pointed to any evidence in the record that would compel a reasonable adjudicator to rule otherwise. The immigration judge based his adverse credibility determination on the discrepancies between the testimony and the application. And the particularly significant one is the fact that he testified that one of his captors cut off a toe and maimed another toe, but these were not mentioned at all. Is that really a discrepancy? Let's look at what he said in his application. He said he was kidnapped in Tijuana by locals and sold to Mexican cartel and drug smugglers. I was beaten severely for approximately three weeks because I refused to cooperate or engage in their drug smuggling operations. When you look at what his testimony is, it says that officers pulled him over and took him to prison for two and a half weeks. He was forced to appear for those charges. He was threatened to, the officers threatened to kill him if his wife did not pay ransom. The officers cut one of my toes and split the other in half with a bolt cutter. A crippled man took care of me. My wife paid the ransom and I was released. I did not get medical treatment. I think I'm quickly summarizing what he said. But why isn't that just an elaboration? I mean, it's not inconsistent, is it? It is not. The characterization of these absences doesn't turn on. But the severing of the toe itself is a markedly different type of physical mistreatment than a beating. Having an appendage severed is different. And this is a dramatically new allegation that he thus set forth for the first time in his testimony, on direct testimony. And it was certainly reasonable for the immigration judge to view this as an embellishment, an attempt to enhance his claim. Well, in his application, I'm looking at it, it says, have you or your family or close friends or colleagues ever experienced harm or mistreatment or threats in the past by anyone? And it says, if yes, explain in detail. And then it gives a little box, just a little box right here. I don't know if that box expands or if they have to write it in the little box. And in it, he says what I just said. I was beaten. And they said, what happened when the harm or mistreatment or threats occurred? Who caused the harm or mistreatment or threats? And why do you believe the harm or mistreatment or threats occurred? And so why isn't that sufficient based on what's in this application? Is it not possible to elaborate further at testimony? It is possible to elaborate further. But this, the application asks for details. At the very top, it informs the applicant under the Part B that you may attach additional sheets. It further explains that you must provide a detailed and specific account of all the events, to the best of your ability, the specific dates, places, descriptions of each event. And then it asks, it fills out the questions of the who, what, why, where Mr. Batista speaks English, has been in this country for a long time. He testified that he prepared this application with the help of his attorney. This is the addition of the toe being severed from his foot. That part of his claim should have been in his application. It increases his, the claimed, his claim of suffering. And then the past persecution element of a withholding of removal claim is truly important. If he can establish past persecution, that creates a rebuttable presumption that he has a likelihood of future persecution and would help him establish that claim. And he tellingly did never mention this toe beforehand, whether it be in the application or in that interview with the asylum officer. And this, the immigration judge was reasonable and correct to rely on this discrepancy. And he was also, the fact they called this a substantial oversight, that in and of itself would have been enough to find Mr. Batista not credible. As this court said in the stress, the Holder case, that although inconsistencies no longer need to go to the heart of the claim in a real ID case, if they do, then that is doubtless of great weight. And so that alone should be sufficient to uphold the adverse credibility determination. Counsel, Judge Gould, could I interject a question here? Yes, Your Honor. Apart from whether the toe being cut off should have been disclosed earlier, what is the significance, if any, under our precedent of the fact that he testifies that his toe was cut off, but I thought also that he did not get any medical treatment? That he, the medical treatment part, it goes to a surrounding circumstance that guided the immigration judge's finding. The fact, when he claims, so this, the toe that got allegedly cut off during his captivity, during the kidnapping, occurred within two or three weeks of him reentering the United States. And he testified that upon illegally reentering the country, he cut his hand and he went to either a hospital or a clinic and got stitches on his hand, but he did not, he states that he did not ask that doctor to look at his toe, despite the fact that it was cut off, and that he was treating it very rudimentarily with bandages for the last three weeks. And that was an implausibility finding that the immigration judge considered in the totality of the circumstances, and that's really the key. So look at the totality here. We have... So it's not just about the toe. It's not just about the toe. He cited several examples. Yes. The lack of any mention of the ransom, and that one, while... Before you go there, can I, because of the time, I'd like to ask you about the Mexico country condition report. The record reflects that the I.J. failed to consider that report, which I trust you'll agree was admitted without objection during the hearing. Am I correct? Yes, it was admitted without objection. The immigration judge at... That's all I need is a yes. Okay. Thank you. Okay. Because of time, I apologize. Okay. And am I also correct that the Ninth Circuit has remanded cases where the I.J. failed to consider a country condition report? And if I'm right there, am I right there, too? If I'm right there, that would require a remand, would it not? No, Your Honor, because that argument that the immigration judge failed to consider the report, Mr. Bautista raised that one to the Board, and the Board addressed that. They found no due process error, and they found no legal or factual error. And that's because while he claimed that the report wasn't considered, he did not point to anything in that report, any independent, objective evidence that he would more likely to not be tortured. And that is really how this Court's precedent covers it. Did the I.J. comment anywhere about that report? Yes, he did. On the first page, he comments that the report was considered in the record. Beyond that, did he make any comment? No, he did not make any comment. But if that is a procedural error that Mr. Bautista believed occurred, he could raise it to the Board. He did raise it to the Board, and the Board corrected it. But he had to point to something that would have changed the outcome of his case. All he has is an incredible claim about this kidnapping. He needed to thus then point to, and that's what the case law says, to independent, objective evidence that he would more likely to not be tortured. One of the main cases is that Kalmathas case where this Court said that the Board immigration judge overly relied on the adverse credibility determination. But there, the country report showed that a certain ethnic group in Sri Lanka, the males, there was widespread torture of them. There's nothing here. We have general evidence of abuse, claims of abuse by law enforcement in Mexico, but nothing to I thought Kalmathas said because the, correct me if I'm wrong, IJ failed to discuss the country report. That was problematic. Is that not the case? The immigration judge here, he did not, you're right, didn't do an eloquent discussion of it. But he considered it, and the Board considered it too. All we know is that IJ had it as part of an exhibit of what he had in front of him. And I'm not, that may be enough. Does Kalmathas say that's enough? Kalmathas is different because there it was just a clear, you're not credible, therefore no cap protection for you. Here, the report was considered and Well, it was acknowledged. So answer the question if you can. Is that enough? Yes, it is. It is enough. Authority for that. The best authority for that is, I mean, I agree with you. Just a moment. Just a second. Sorry. If it were to be remanded, I think we might guess what the outcome would be. But the issue for me is, I may not have discretion here if the Ninth Circuit says you have to do something more than what was done here. So give me your best case as was asked. Okay. In Garcia v. Holder, 749 F. 3rd, 785, this is a real ID case from 2014. There they made the same argument. But this court found that unless there's clear indication that the IJ and the board did not consider the documentary evidence, general language that the agency considered all the evidence of the record is sufficient. The board's language that there was no evidence in the record that the applicant was ever tortured or that she faces a clear probability of torture was sufficient. And so that is similar here. That was an adverse credibility claim plus no. The key is he has the burden of when he's found not credible to point to independent objective evidence. And he did not do so either before the immigration judge or the board. Judge Gould, do you have any questions? I have no questions, thank you. Do you have any questions?  Okay. Thank you very much. Thank you, Your Honor. I appreciate your argument here. I'll give you 30 seconds. 30 seconds. Okay. Talk fast. Okay, just, okay, number one, the whole thing about the seeking or not getting medical attention and the ransom, again, that was part of the process that was generally referred to with the kidnapping and being kept. So that's just, again, part of the general reference. Number two, with regard to the country report, in his appeal, the petitioner did mention, did refer to the reports. And in his BIA appeal at administrative record, page 25, saying that officials don't protect Mexican citizens, there's corruption, they don't protect citizens, there's violations. And he mentioned on AR-26 that the judge didn't even discuss or consider the country reports. The judge just referred to it on the first page of his oral decision. Thank you very much. Yes. Okay, thank you, Your Honor. Thank you. Thank you both for your arguments here today. The case of Daniel Bautista-Lopez v. Jefferson B. Davis is submitted.
judges: Gould, Murguia, Zouhary